CINCINNATI RIVERFRONT COLISEUM, INC., APPELLEE, APPELLANT AND CROSS-APPELLEE, *v.* MCNULTY CO. ET AL.; CLARK ENGINEERING CO., APPELLEE AND CROSS-APPELLANT; CITY OF CINCINNATI, APPELLANT AND CROSS-APPELLEE.

[Cite as Cincinnati Riverfront Coliseum, Inc. *v.* McNulty Co. (1986), 28 Ohio St. 3d 333.]

334

(No. 85-2006—Decided December 26, 1986.)

*Frost & Jacobs, Gary L. Herfel* and *Mark H. Klusmeier,* for appellee, appellant and cross-appellee, Cincinnati Riverfront Coliseum, Inc.

*Strauss & Troy* and *Ernest A. Eynon II,* for appellee and cross-appellant, Clark Engineering Company.

*Richard A. Castellini,* city solicitor, *Jerry F. Luttenegger* and *Daniel J. Schlueter,* for appellant and cross-appellee, city of Cincinnati.

LOCHER, J. The general issues presented in the instant action are (1) whether a new trial was properly granted to Clark and (2) whether the city's motions for a directed verdict were properly denied. For the reasons that follow, we answer in the affirmative on both issues and uphold the decision of the court of appeals.

## I

### The Riverfront Appeal

Riverfront contends that the court of appeals erred when it reversed the decision of the trial court and granted Clark a new trial. The new trial

was granted on the basis of the trial court's refusal to consider written interrogatories submitted by Clark.

On the day that the trial court was to instruct the jurors on the law governing the resolution of the disputed issues, Clark requested in writing that the verdict forms be supplemented with a large number of interrogatories to be answered in the course of the deliberations. The trial court flatly denied Clark's request. Riverfront maintains that the submission of the interrogatories was a delay tactic and that a trial court has a broad discretion to refuse to consider submitted interrogatories.

Civ. R. 49(B) governs the use of interrogatories in connection with a general verdict. The rule provides in pertinent part: "The court *shall* submit written interrogatories to the jury, together with appropriate forms for a general verdict, *upon request of any party prior to the commencement of argument.* * * * The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury, *but the interrogatories shall be submitted to the jury in the form that the court approves.*" (Emphasis added.)

Following a timely request by a party, a mandatory duty arises to submit written interrogatories to the jury, provided they are in the form the court approves. "The wording of Civ. R. 49(B), that the 'court shall submit written interrogatories * * * upon request of any party,' *is mandatory in character and leaves no discretion in the trial court on the question of submission, upon request, of proper interrogatories to the jury.* The rule, however, reposes discretion in the court to pass upon the *content* of requested interrogatories as they 'shall be submitted to the jury in the form the court approves.'" (Emphasis added.) *Riley* v. *Cincinnati* (1976), 46 Ohio St. 2d 287, 298 [75 O.O.2d 331], citing *Ragone* v. *Vitali & Beltrami, Jr., Inc.* (1975), 42 Ohio St. 2d 161 [71 O.O.2d 164].

In the cause *sub judice,* the trial court did not refuse to submit the interrogatories to the jury following an examination of the form and content, but clearly denied Clark's timely request without any consideration. The request was flatly denied because it was "impossible for the Court to take up additional interrogatories at this time."

This court respects the time restraints under which trial courts must work; however, we can not approve the ignoring of the Civil Rules. We therefore agree with the decision of the court of appeals, and hold that the trial court erred when it failed to follow the mandate of Civ. R. 49(B).

Riverfront additionally contends that the trial court's error was harmless under Civ. R. 61.[3] We disagree. The essential purpose to be

---

[3] Civ. R. 61 provides:

"No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."

served by interrogatories is to test the correctness of a general verdict by eliciting from the jury its assessment of the determinative issues presented by a given controversy in the context of evidence presented at trial. See *Davison* v. *Flowers* (1930), 123 Ohio St. 89. As the court of appeals correctly stated:

"* * * In a case such as this where the volume of evidence is substantial, the questions posed by the evidence are complex, and the parties potentially responsible for the losses are numerous, the failure to act in accordance with the dictates of the Rule must be held to result in prejudice by effectively foreclosing any meaningful inquiry into the integrity of the fact-finding process and thus vitiating the right to determine whether the jury has lost its way in returning the general verdicts."[4] Accordingly, we hold that the trial court's error was prejudicial to Clark.

## II
## The Clark Cross-Appeal

Clark avers that the court of appeals should have reversed the trial court's decision on additional grounds. Clark presents these additional grounds through five separate propositions of law.

Initially, Clark argues that the trial court erred by denying its motions for directed verdict and for a judgment notwithstanding the verdict. Clark maintains that it is not liable for construction defects as a matter of law because the structure, as built, materially deviates from its submitted design. We disagree. Generally, one who contracted in a specialized professional capacity to provide the design for a particular structure may be held to respond in damages for the foreseeable consequences of a failure to exercise reasonable care in the preparation of the design. See Acret, Architects & Engineers (2 Ed. 1984). See, also, Bell, Professional Negligence of Architects and Engineers 177-179, in Roady & Andersen, Professional Negligence (1960); *Quail Hollow East Condominium Assn.* v. *Donald J. Scholz Co.* (1980), 47 N.C. App. 518, 268 S.E. 2d 12.

There are limited circumstances under which an engineer or architect may be relieved from the effects of what might otherwise be held to constitute actionable negligence. See *Covil* v. *Robert & Co. Assoc.* (1965), 112 Ga. App. 163, 144 S.E. 2d 450. However, there may well exist in the same construction a cause of action in favor of the plaintiff for damages emanating from both faulty design and faulty construction. An architect or structural engineer may avoid liability for negligent design if it is proven that deviations in construction are material and that the deviations have been the proximate cause of the damages claimed by the plaintiff. See *State, ex rel. Stephan,* v. *Wolfenbarger & McCulley, P.A.* (1984), 236 Kan. 183, 690 P.2d 380. Accord *Corbetta Constr. Co.* v. *Lake Cty. Pub. Bldg.* (1978), 64 Ill. App. 3d 313, 381 N.E. 2d 769. A contractor's devia-

---

[4] *Cincinnati Riverfront Coliseum, Inc.* v. *Clark Engineering Co. et al.* (Oct. 30, 1985), Hamilton App. Nos. C-840639 and C-840640, unreported.

tions from the plans and specifications submitted by a structural engineer or architect should be regarded as material only if they serve independently to break the causal connection between the design and the plaintiff's damages by completely removing the effects of any negligence on the part of the structural engineer or architect in preparing the design. See *Cascone* v. *Herb Kay Co.* (1983), 6 Ohio St. 3d 155; *Thrash* v. *U-Drive-It Co.* (1953), 158 Ohio St. 465 [49 O.O. 402].

In the instant action, there is evidence of a variety of modifications and alterations in the design of the walkway. However, the record also reveals evidence to negate the effect of the deviations. Upon review of the record, we find that there was evidence presented which specifically attributed the deterioration to defects in the design, and that Clark, by its own admission, did not consider the effect of exposure to weather or the ability to disperse surface water when it designed the walkway.

Civ. R. 50(A)(4) provides the standard for a decision on a motion for directed verdict: "When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."

In the case at bar, we find that the trial court did not commit prejudicial error by denying Clark's motions for directed verdict and motion for judgment notwithstanding the verdict. "* * * [I]t is uncontestably the duty of a trial court to submit an essential issue to the jury when there is sufficient evidence, if believed, relating to that issue to permit reasonable minds to reach different conclusions on that issue." *O'Day* v. *Webb* (1972), 29 Ohio St. 2d 215, 220 [58 O.O.2d 424]. As discussed above, the record reveals ample testimony and evidence over which reasonable minds could differ with respect to the liability of Clark in this matter.

Clark's next argument links three distinct claims together. The first claim contends that the trial court erred when it circumvented an attempt by Clark to elicit testimony that would have served, in Clark's estimation, to attribute some of Riverfront's losses to the negligence of the parties who had extricated themselves from the lawsuit prior to trial. The specific testimony was to address the subject of alleged improprieties in the installation of the structural steel components supporting the walkway. We fail to see the relevance of this excluded testimony concerning a single bar joist which was totally unrelated to the deterioration at issue. This testimony was properly excluded.

Second, Clark avers that the form and content of one of the two interrogatories submitted to the jury prevented a fair and complete apportionment of liability among all the negligent parties held responsible for the losses sustained by Riverfront. The trial court submitted an interrogatory

to the jury which instructed it to apportion damages among Riverfront, Clark, the city, McNulty Co. and "Others involved."[5] Following the standards of comparative negligence that governed the resolution of the instant action at the trial level, the jury was required to specify the percentage of negligence "attributable to each party to the action" that directly and proximately caused Riverfront's losses.[6] We find that the form and content of the interrogatory involved did not prevent a fair and complete apportionment of liability. The parties remaining in the controversy for trial were specifically named and those that had been dismissed were reasonably made subject to consideration for purposes of apportionment under the category of "Others involved." No undue emphasis was placed on the litigating parties by grouping the others under this generic category. Moreover, the trial court's instruction clearly permitted the jury to consider all factors relevant to the apportionment of damages.[7]

The remaining argument made by Clark is directed at another interrogatory considered by the jury which called for a determination of "the total amount of * * * [plaintiff's] damage and loss" without regard to whose negligence proximately caused it. Clark asserts that the interrogatory "begs the question on damages, * * * lumps together numerous defendants, and * * * provides for recovery of all damages whether connected with anyone's negligence or not." While we are not enamored with the language used by the trial court, we fail to see the prejudicial effect of this interrogatory. Furthermore, the instructions limited the general

---

[5] The interrogatory read as follows:

"2.   What percentage of the negligence which proximately caused the damage and loss is attributable to:

| | |
|---|---|
| "Clark Engineering Company | ____% |
| "City of Cincinnati | ____% |
| "The McNulty Company | ____% |
| "Others involved | ____% |
| "Cincinnati Riverfront Coliseum | ____% |

"(Total must be 100%)"

[6] R.C. 2315.19 provides in pertinent part:

"(B)  In any negligence action in which contributory negligence is asserted as a defense, the court in a nonjury trial shall make findings of fact, and the jury in a jury trial shall return a general verdict accompanied by answers to interrogatories, that shall specify:

"* * *

"(2)  The percentage of negligence that directly and proximately caused the injury, in relation to one hundred per cent, that is attributable to each party to the action."

[7] The trial court instructed the jury as follows:

"Now what you have to do is, on the basis of the law, as I have given it to you, and the evidence, fill in a percentage for each one of those on each one of those five lines. Now the fact that there are five lines doesn't mean that any particular one was negligent. You can put on any one of those lines any figure that you think is based on the law and evidence, from zero up to a hundred. The total, however, of all the different percentages must be a hundred percent. * * *"

assessment of damages only to those losses resulting from acts of negligence that were placed in issue at trial and did not prejudicially raise the presumption of a compensable loss.[8]

## III

## The City's Appeal

In its sole proposition of law, the city maintains that the trial court erred by denying its Civ. R. 50 motion for directed verdict at the close of Riverfront's case. As discussed above, Civ. R. 50(A)(4) sets forth the standard for decision on a motion for directed verdict.

The city moved for a directed verdict on three separate occasions during the course of the trial and, on each occasion, the motion was overruled. The city now claims that the evidence did not prove that any of its alleged acts or omissions caused the deck deterioration and ultimate destruction, or that Riverfront's alleged damages are in any way a natural and probable consequence of the alleged contract breach. We do not agree.

The city was under a contractual obligation to routinely maintain the walkways and was also responsible for full maintenance and repair of those walkways which contained the cobblestone pavers. The evidence submitted by Riverfront at trial revealed that the drains installed in the walkways were commonly clogged with dirt and debris that obstructed the flow of surface water into the drains situated in the strip. Additionally, the dispersal of water was also impeded by the city's installation of drain covers that were set in place at a level clearly above the surface of the walkway. The evidence also shows that the maintenance and repair responsibilities with regard to the cobblestone pavers were not met. The mortar in which the pavers were set was extremely porous and deteriorated. Due to the condition of the mortar, water was able to reach the steel below the pavers and deteriorate it.

The record clearly reveals that there is a credible factual basis to permit findings that the city's acts and omissions combined to form proximate cause for at least a part of the deterioration. We conclude that reasonable minds could have reached more than one conclusion with respect to the city's liability, and that the standard for directing a verdict in the city's

---

[8] Clark also presents two additional propositions of law. Clark contends that the trial court erred by (1) excluding certain expert testimony and an accompanying videotape and (2) admitting into evidence certain repair bills submitted by Riverfront. The expert testimony was excluded as a result of Clark's failure to meet a witness identification deadline set by the trial court. The repair bills were presented by Riverfront to demonstrate the extent of damages it sustained. Clark argues that the bills should have been excluded because Riverfront provided no foundation for the reasonableness or necessity of the repairs. Based upon the fact that a new trial will occur, we do not find it necessary to address these evidentiary issues because they are not material to the further progress of this case. See *Ide* v. *Churchill* (1863), 14 Ohio St. 372; *Eureka Fire & Marine Ins. Co.* v. *Baldwin* (1900), 62 Ohio St. 368; and *Brady* v. *Stafford* (1926), 115 Ohio St. 67.

favor under Civ. R. 50(A)(4) was not met. Therefore, we affirm the decision of the court of appeals with regard to the city's appeal.

Based on the foregoing, we hold that a new trial was properly granted to Clark and that the city's motions for directed verdict were properly denied. Accordingly, we affirm the judgment of the court of appeals.

*Judgment affirmed.*

CELEBREZZE, C.J., SWEENEY, HOLMES, C. BROWN, DOUGLAS and WRIGHT, JJ., concur.